PD-1427-13
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/19/2015 4:51:26 PM
Accepted 3/20/2015 8:02:52 AM
ABEL ACOSTA
CLERK

LAW OFFICES

## GOLDSTEIN, GOLDSTEIN AND HILLEY

310 S. ST. MARY'S STREET, SUITE 2900
SAN ANTONIO, TEXAS 78205-3117

ELI GOLDSTEIN
(1910-1998)
GERALD H. GOLDSTEIN
LICENSED IN TEXAS AND COLORADO
VAN G. HILLEY
CYNTHIA HUJAR ORR
DONALD H. FLANARY, III

AREA CODE 210
TELEPHONE 226-1463

AREA CODE 210
FACSIMILE 226-8367

March 19, 2015

FILED IN
COURT OF CRIMINAL APPEALS

March 25, 2015

ABEL ACOSTA, CLERK

Texas Court of Criminal Appeals
201 W. 14th St.
Austin, Texas 78701

**RE:** *Vanessa Cameron vs. The State of Texas, PD-1427-13,* in the Court of Criminal Appeals of Texas.
[*State of Texas vs. Vanessa Cameron*, Cause No. 2010-CR-4286C in the 379th Judicial District Court, Bexar County, San Antonio, Texas.]

To The Honorable Judges of the Court of Criminal Appeals:

### POST-SUBMISSION LETTER/MEMORANDUM
### [RECORD CITATIONS, CORRECTION, AND AUTHORITY]

The following record citations, correction and authority:

### SUGGESTED ALTERNATIVE

As to Judge Richardson's question regarding opening the Courtroom doors and allowing the public to observe from the hallway, Counsel would call the Court's attention to RR Vol. 2 at 8-9, and Findings of Fact 4, at CR 294.

The record reflects that the *only* suggestion positive by the trial to remedy the lack of space for any member of the public or family to view voir dire was the following colloquy [relevant record page 7 and 8 attached][1]:

THE COURT: ...If you want to open up those doors and have them all stand in that little hallway there so they can observe the whole thing?

_____

1    Said colloquy immediately follows the Court's rejection of Defense Counsel's to place family members behind counsel table in front of he trial court as a security risk.

MR. ESPARZA:    I JUST WANTED AN ALTERNATIVE, JUDGE.

MR. ESPARZA:    If you want to open those doors and put chairs and have people – have the public sit there, that's fine with me.

THE COURT:    We don't have enough chairs.  Are we going to – if you want, we can open up those doors in the back and have them stand to where they can observe and hear every single thing that's going on.

MS. ISHY:    And, Your Honor, just for the record, I think *that's going to be in violation of any fire codes in this city.*

THE COURT:    I mean, we're having issues. . . .

MR. ESPARZA:    But there's no ruling from the Court on my objections?

THE COURT:    Your objection is that people have been excluded from the Court.

MR.ESPARZA:    Yes, sir.

THE COURT:    The Court has never ruled that way, so I'm not sure that it is that you're objecting to.

MR. ESPARZA:    The absence of the public from jury selection...

THE COURT:    Every single chair that is made available for anybody is currently put within the jury venirepanel area to accommodate every single member of the venirepanel. I know that *there are certain areas that we cannot place members of the family.  I know that simple because of the fire code issues* . . . RR Vol. 2 at 7-9. (emphasis supplied)

As for the trial court's Findings of Fact, the Court does state: "The Court offered to open the doors in the back of the Court and let the public observe from the hall area." Findings of Fact at CR 294.

Interestingly, the Court omits any mention of the State's objection that same would violate the fire code or the Trial Court's on record recognition of these "areas that we cannot place members of the family . . . because of fire

code issues." *See* RR Vol. 2 at 8 & 9.[2]

## OFF THE RECORD SUGGESTION

With respect to Judge Hervey's questions regarding off the record discussions, as well as Counsel's expressed concerns regarding Rule 605's provisions prohibiting a judge from becoming a witness, the Counsel would note that the Court inexplicably states in his Finding of Fact that "Suggestions were offered to the Attorney for the Defense regarding placement of observers, both on and off the record." *See* CR at 294, paragraph 6.

A careful review of the entire record reveals that the only on record suggestion made by the court was the use of the foyer hallway objected to by the State and recognized by the Court as violating City fire codes.

As for any unspecified and unidentified off the record suggestions, such would hardly qualify as the *fact specific alternatives and explanations* required by the United States Supreme Court in *Presley*, and this Court in *Steadman* and *Lilly*. *See Presley v. Georgia*, 558 U.S. 209, 215 (2010) ("The trial court erred because it did not even identify any overriding interest likely to be prejudiced absent the closure of voir dire. "); *Waller v. Georgia*, 467 U.S. 39, 44 (1984) ("The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."); *Lilly v. State*, 365 S.W.3d 321, 329 (Tex. Crim. App. 2012) ("The findings must be on the record and specific. . . ." (citing *Steadman v. State*, 360 S.W.3d 499, 505 (Tex. Crim. App. 2012))).

As Judge Keasler remarked during oral argument, the record will reflect what it will reflect. Here, the record establishes that spectators were removed from the courtroom and that the defense objected to the same repeatedly. Such off the record "suggestions" do not meet the stringent requirements of fact specific findings required by *Presley*, 588 U.S. at 215 and *Lilly*, 365 S.W.3d at 329.

## STRUCTURAL ERROR

As to Judges Keasler and Meyers' questions regarding the appropriate standard applied to a Sixth Amendment open courtroom violation, Counsel would call this Court's attention to *Lilly v. State*, where this Court noted that

2      With respect to the State's argument that the Trial Court was somehow misled into believing defense counsel had waived his seven separate objections by statements such as "okay" or "thank you Judge", Counsel would call the Court's attention to the Court's finding No. 2 that "[t]he defense attorney in this case was more inclined to obtain a ruling from the Court and seemed less inclined to accept any solutions offered by the Court." See: CR 294, Paragraph 2.

"the violation of a criminal defendant's right to a public trial is structural error that does not require a showing of harm." *Lilly,* 365 S.W.3d at 328 (citing *Johnson v. United States,* 520 U.S. 461, 468 - 69 (1997)); *See also Steadman v. State,* 360 S.W.3d 499, 510 - 11 & fn. 41(Tex. Crim. App. 2012) (listing many state and federal cases finding it to be structural error).

Respectfully submitted,


*/s/ Gerald H. Goldstein*
Gerald H. Goldstein
State Bar No. 08101000
ggandh@aol.com
Donald H. Flanary
State Bar No. 24045877
Goldstein, Goldstein & Hilley
310 S. St. Mary's Street, 29th Floor
San Antonio, Texas 78205
210-226-1463
210-226-8367 fax

John Hunter
State Bar No. 24077532
310 S. St. Mary's Street, Ste. 1840
San Antonio, Texas    78205
210-399-8669
210-568-4927 fax

Attorneys for Appellant,
Vanessa Cameron


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above foregoing Appellant's Post-Submission Brief has been delivered to ADA Jay Brandon, at jay.brandon@bexar.org, as a registered participant of the EfileTexas.gov, on this the 19th day of March, 2015.

By:____*/s/Gerald H. Goldstein*_____
Gerald H. Goldstein

and put them right here in front of the bench, Judge. We can find places to put them.

THE COURT: Okay. We have attorneys that are seated at both sides. We have security issues. That is unreasonable. Where would we put them? Are we going to have them stand here next to the -- next to me? That -- I think that would be considered a security risk. You want to open up those doors and have them all stand in that little hallway there so they can observe the whole thing? Maybe we could do that. Would that satisfy you?

MR. ESPARZA: I just wanted an alternative, Judge.

THE COURT: I'm giving you alternatives. Which one would satisfy you in a way that the bailiffs would feel that their job in keeping the courtroom safe and secure would be satisfied?

MR. ESPARZA: I can't suggest that. If you want to open those doors and put chairs and have people -- have the public sit there, that's fine with me.

THE COURT: We don't have enough chairs. Are we going to -- if you want, we can open up those doors in the back and have them stand to where they can observe and hear every single thing that's going on.

MS. ISCHY: And, Your Honor, just for the record, I think that's going to be in violation of any fire codes in this city.

THE COURT: And that -- I mean, we're having issues. Counsel obviously wants her entire family here. I mean, I don't know what else we could do. The courtroom's going to be absolutely stuffed with venirepanel members. I don't know what we're going to do.

MR. ESPARZA: But there's no ruling from the Court on my objection?

THE COURT: Your objection is that people have been excluded from the Court.

MR. ESPARZA: Yes, sir.

THE COURT: The Court has never ruled that way, so I'm not sure what it is that you're objecting to.

MR. ESPARZA: The absence of the public from jury selection.

THE COURT: I'm not sure what -- I have not in any way ruled --

MR. ESPARZA: No, sir. No, sir. I'm saying, prior to you taking the bench and calling the case for court --

THE COURT: Yes.

MR. ESPARZA: -- the bailiff excluded all of the public from this courtroom for jury selection. I'm just --

THE COURT: Okay. I'm -- and, again, now you're bringing it up to the Court on the record.

MR. ESPARZA: Yes, sir.

THE COURT: I'm telling you that the Court has never ruled that the public is excluded from jury selection.

MR. ESPARZA: Yes, sir.

THE COURT: I'm well aware of the rights this individual defendant has to have an open court proceeding which excludes voir dire; however, I'm looking around this court and I'm telling you, I don't see where we could put them.

MR. ESPARZA: Yes, sir.

THE COURT: Every single chair that is made available for anybody is currently put within the jury venirepanel area to accommodate every single member of the venirepanel. I know that there are certain areas that we cannot place members of the family. I know that simply because of fire code issues, of police detection issues. I recognize that. I don't see any available chairs as I'm looking around the courtroom where anybody could sit. I just don't know how we could accommodate.